**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| OSVALDO CAMBA PONCE, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Cause No. 4:22-CV-12 |
| | § | |
| UNITED STATES OF AMERICA and | § | |
| JOHN DOE AGENT, Individually, | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

NOW COMES OSVALDO CAMBA PONCE ("Plaintiff CAMBA PONCE"), complaining of the UNITED STATES OF AMERICA ("Defendant USA") and JOHN DOE AGENT ("Defendant AGENT") (hereinafter collectively "Defendants"), and for a cause of action respectfully shows the Court as follows:

### I.   PARTIES

1.      Plaintiff OSVALDA CAMBA PONCE is a citizen of Mexico.

2.      Defendant UNITED STATES OF AMERICA is a governmental entity and may be served with process by delivering a copy of the summons and the complaint to the United States attorney in the district the action is sought, sending a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office, or by sending two copies of the summons and two copies of the complaint to the Office of Chief Counsel, U.S. Customs and Border Protection, 1300 Pennsylvania Avenue, Suite 4.4-B, Washington, D.C. 20229.

3.      Defendant JOHN DOE AGENT is an unidentified officer of the United States

Border Patrol, a division of the United States Customs and Border Protection agency, which is part of the United States Department of Homeland Security. Further discovery will provide information as to Defendant JOHN DOE AGENT's name and residence for appropriate service of process. Plaintiff CAMBA PONCE will seek leave to amend this Complaint once such information is obtained.

4.      At all times relevant to this Complaint, Defendant AGENT was an employee acting within the course and scope of his employment with the United States Border Patrol.

5.      At all times relevant to this Complaint, Defendant AGENT was an investigative or law enforcement officer of the United States government empowered by law to execute searches, to seize evidence, and to make arrests for violations of federal law. *See, e.g.*, 8 U.S.C. § 1357. Upon information and belief, Defendant AGENT also had the powers conferred by 21 U.S.C. § 878(a) pursuant to a memorandum of understanding between the Drug Enforcement Administration and the Department of Homeland Security.

## II.   JURISDICTION AND VENUE

6.      This Court has jurisdiction over the Federal Tort Claims Act ("FTCA") and *Bivens* claims under the Fourth Amendment to the United States Constitution, 28 U.S.C §§ 1331 and 1346(b)(1). This Court has supplemental jurisdiction over the common law battery claim brought in the alternative against Defendant AGENT under 28 U.S.C. § 1367.

7.      This Court has jurisdiction over the FTCA claims because, on or about September 29, 2021, Plaintiff CAMBA PONCE submitted his administrative tort claim on Standard Form 95 to the Office of Chief Counsel for the United States Customs and Border Protection agency. Plaintiff CAMBA PONCE's administrative tort claim was denied on or about October 8, 2021. Plaintiff CAMBA PONCE has therefore exhausted his administrative remedies, and the agency's denial of his administrative tort claim establishes this Court's jurisdiction under 28 U.S.C. § 2675(a).

8.      Venue is proper in this judicial district under 28 U.S.C § 1391(b)(2) and (e)(1)(B) because the act or omissions giving rise to this Complaint occurred within this judicial district, and under 28 U.S.C. § 1402(b) because the act or omissions giving rise to this Complaint occurred within this judicial district.

9.      Intra-district assignment to the Pecos Division is proper because the vicious canine attack giving rise to this Complaint occurred within Culberson County, specifically in Van Horn, Texas.

## III.   FACTS

10.     Plaintiff CAMBA PONCE is a thirty-four-year-old, hardworking, father of two.

11.     Upon information and belief, local Border Patrol agents are familiar with the border crossings at or around Van Horn, Texas. There are usually Border Patrol-marked vehicles positioned along the border in this area.

12.     On or about April 30, 2021, Plaintiff CAMBA PONCE and several other individuals crossed the border into the United States from Mexico on foot, at or around Van Horn, Texas.

13.     Plaintiff CAMBA PONCE was not carrying any weapons, controlled substances, or contraband. Nor did Plaintiff CAMBA PONCE visibly carry anything that could be perceived as a weapon, controlled substance, or contraband.

14.     On United States soil, Plaintiff CAMBA PONCE ran towards a highway when he saw a Border Patrol-marked vehicle nearby.

15.     Because Plaintiff CAMBA PONCE believed he saw the Border Patrol-marked vehicle activate its lights, he stopped running and leaned against a fence to catch his breath.

16.     While he leaned against this fence, an unmuzzled Border Patrol canine charged at Plaintiff CAMBA PONCE.

17.     At such time and place, Plaintiff CAMBA PONCE could hear a Border Patrol agent repeatedly shouting the verbal command "Squash" at the Border Patrol canine. Upon information and belief, that agent was Defendant AGENT.

18.     Plaintiff CAMBA PONCE is unaware of the purpose or significance of these "Squash" verbal commands.

19.     The Border Patrol canine attacked and mauled Plaintiff CAMBA PONCE during the ongoing "Squash" verbal commands.

20.     During this vicious attack, the Border Patrol canine bit Plaintiff's CAMBA PONCE's right forearm near his elbow.

21.     With its teeth clamped onto Plaintiff CAMBA PONCE's arm, the Border Patrol canine violently pulled and jerked Plaintiff CAMBA PONCE's entire body.

22.     Plaintiff CAMBA PONCE screamed out in pain because of the excruciating pain.

23.     Upon information and belief, this vicious attack persisted for at least five minutes before Defendant AGENT finally called the Border Patrol canine off Plaintiff CAMBA PONCE. Despite Plaintiff CAMBA PONCE's cries for help, Defendant AGENT stood by and allowed the Border Patrol canine to continue mauling Plaintiff CAMBA PONCE during this period of time.

24.     Upon information and belief, the Border Patrol canine's name is: "Cappy," "Cappi," or some other iteration of this word.

25.     This Border Patrol canine matriculated through the United States Customs and Border Protection agency's "Canine Program." The Canine Program certifies that its canines have completed a rigorous curriculum of specialized training across various disciplines to become an effective law enforcement tool to "Protect the Homeland."

26.     Shortly thereafter, more Border Patrol agents arrived at the scene in one Border Patrol-

marked vehicle and one unmarked pickup truck.

27.     Upon information and belief, Defendant AGENT and the other Border Patrol agents used, or had the equipment and skills to use, specialized drones to track and observe Plaintiff CAMBA PONCE's movements.

28.     These Border Patrol agents asked Plaintiff CAMBA PONCE if the Border Patrol canine had a muzzle on, but when Plaintiff informed the agents that the canine was not muzzled, the agents glanced at each other and stayed quiet. Upon information and belief, the reason why the Border Patrol agents were taken aback by Plaintiff CAMBA PONCE's answer was because Defendant AGENT should have placed a muzzle on the canine before releasing this specially trained animal to apprehend a defenseless, unarmed person.

29.     At all times relevant to this Complaint, Plaintiff CAMBA PONCE posed no threat to anyone, and especially not Defendant AGENT. Plaintiff CAMBA PONCE was clearly unarmed. He was not carrying anything that could remotely be perceived as a weapon, controlled substances, or contraband.

30.     Plaintiff CAMBA PONCE hereby realleges and incorporates Paragraphs 4–5 as if fully set forth in length.

31.     While transporting Plaintiff CAMBA PONCE to the "immigrant hospital" at a nearby weigh station, Border Patrol agents told Plaintiff that he might die due to the severity of the dog bites.

32.     At the immigrant hospital, Plaintiff CAMBA PONCE received over 57 stitches to the wounded area.

33.     Because Plaintiff CAMBA PONCE could not move his fingers, a treating nurse requested that Plaintiff be transported to University Medical Center in El Paso, Texas, for surgery.

34.     At University Medical Center, Plaintiff CAMBA PONCE underwent surgery to repair

the tendons that run from his elbow to his fingers.

## IV.   CAUSES OF ACTION

### COUNT I: FTCA CLAIM AGAINST DEFENDANT
### UNITED STATES OF AMERICA

35.     Plaintiff CAMBA PONCE hereby realleges and incorporates Paragraphs 1–34 as if fully set forth in length.

36.     At all times relevant to this Complaint, Defendant AGENT was an investigative or law enforcement officer of the United States government empowered by law to execute searches, seize evidence, and make arrests for violations of federal law.

37.     Defendant AGENT, who was an employee or agent of the United States acting within the course of his duties as a Border Patrol Agent, intentionally caused harmful or offensive contact with Plaintiff CAMBA PONCE by intentionally releasing an unmuzzled Border Patrol canine to chase and apprehend a helpless, unarmed person, or by verbally commanding this specially trained canine to attack such a person, thereby causing Plaintiff CAMBA PONCE to suffer severe injuries.

38.     Alternatively, Defendant AGENT, who was an employee or agent of the United States acting within the course of his duties as a Border Patrol Agent, intentionally caused harmful or offensive contact with Plaintiff CAMBA PONCE by verbally commanding the Border Patrol canine to attack and maul a helpless, unarmed person, thereby causing Plaintiff CAMBA PONCE to suffer severe injuries.

39.     Alternatively, Defendant AGENT, who was an employee or agent of the United States acting within the course of his duties as a Border Patrol Agent, intentionally caused harmful or offensive contact with Plaintiff CAMBA PONCE by failing to call the Border Patrol canine off its attack once Plaintiff CAMBA PONCE was apprehended or subdued, thereby causing Plaintiff to suffer severe injuries.

40.     Defendant AGENT's actions of utilizing this specially trained law enforcement tool in such a manner constituted excessive and unreasonable force, and was unauthorized, unprivileged, and unlawful.

41.     Defendant AGENT's battery directly and proximately caused Plaintiff CAMBA PONCE's injuries and damages described in Paragraphs 69–74.

42.     A private person could be sued under the same circumstances for their employee or agent's intentional torts committed within the scope of their employment/agency.

43.     Defendant USA is directly and vicariously liable for Defendant AGENT's battery under the FTCA. Because Defendant AGENT was an investigative or law enforcement officer who was authorized by law to execute searches, seize evidence, and make arrests, Defendant USA is not immune from liability for Defendant AGENT's intentional torts.

## COUNT II: FTCA CLAIM AGAINST DEFENDANT
## UNITED STATES OF AMERICA

44.     Plaintiff CAMBA PONCE hereby realleges and incorporates Paragraphs 1–34 as if fully set forth in length.

45.     At all times relevant to this Complaint, the United States Department of Homeland Security was an executive department of Defendant USA, the United States Customs and Border Protection was a component agency therein, and the United States Border Patrol was a component division thereof. *See* 6 U.S.C. §§ 111, 211.

46.     The United States Department of Homeland Security and the United States Customs and Border Protection, including their component division, the United States Border Patrol, had a duty to execute their agency functions in a manner that avoids causing unreasonable, excessive, and unprovoked harm and injury to third parties. This duty includes the handling and use of specially trained Border Patrol canines with appropriate regard for the safety of all persons, such as Plaintiff

CAMBA PONCE.

47.     The United States Department of Homeland Security and the United States Customs and Border Protection, including their component division, the United States Border Patrol, breached this duty of care in one or more of the following ways:

a.  Authorizing, permitting, or allowing their employees or agents to use force greater than what is reasonably required by the circumstances;

b.  Negligently entrusting control of a specially trained law enforcement tool to an incompetent, unqualified, and unskilled employee or agent;

c.  Negligent handling of a specially trained Border Patrol canine by an employee or agent within the scope of their duties;

d.  Negligent use of a specially trained Border Patrol canine to apprehend or subdue a harmless, helpless, and unarmed person;

e.  Negligent failure to restrain or confine a specially trained Border Patrol canine;

f.  Negligent failure to supervise their employees or agents to ensure they take reasonable steps to avoid harm to others;

g.  Negligent failure to train their employees or agents to ensure they can properly identify a harmless, helpless, and unarmed person;

h.  Negligent failure to train their employees or agents to ensure they can properly identify the risk of death or seriously bodily injury posed by a suspect;

i.  Negligent failure to train their employees or agents to ensure they can properly identify when a suspect no longer poses a danger to the arresting officer or the public;

j.  Negligent failure to train their employees or agents to ensure they do not unlawfully use excessive and unreasonable force;

k.  Negligent failure to train their employees or agents on "use of force proficiency" under the United States Customs and Border Protection's Administrative Guidelines and Procedures Handbook

l.  Negligent failure to train their employees or agents to ensure they can properly control or handle a specially trained Border Patrol canine;

m.  Negligent failure to verify their employees or agents know the proper verbal commands to control or handle a specially trained Border Patrol canine;

n. Negligent failure to train Border Patrol canines to promptly obey verbal commands given by an employee or agent;

o. Negligent failure to take reasonable steps in planning the operation to minimize the risk that excessive and unreasonable force would be used; and

p. Negligent failure to uphold the Standards of Conduct under United States Customs and Border Protection Directive 51735-013B.

48. One or more of the foregoing acts or omissions was contrary to what a reasonable and prudent person would have done under the same or similar circumstances, and thus constitutes negligence.

49. As a direct and proximate result of this negligence, Plaintiff CAMBA PONCE suffered the injuries and damages described in Paragraphs 69–74.

50. A private person could be sued under the same circumstances for their own negligence in causing such injuries and damages.

51. A private person could also be sued under the same circumstances for their employee or agent's negligent acts or omissions that caused such injuries and damages.

52. Alternatively, and without waiving the other causes of action asserted in this Complaint, Defendant USA is directly and vicariously liable under the FTCA because Defendant AGENT, in his capacity as an employee or agent of these governmental entities, acted unreasonably or recklessly by causing severe injuries to Plaintiff CAMBA PONCE.

## COUNT III: *BIVENS* CLAIM AGAINST DEFENDANT JOHN DOE AGENT

53. Plaintiff CAMBA PONCE hereby realleges and incorporates Paragraphs 1–34 as if fully set forth in length.

54. At all times relevant to this Complaint, Defendant AGENT was acting under the color of law.

55.    Defendant AGENT's actions under the color of federal law deprived Plaintiff CAMBA PONCE of his right to be free from unreasonable seizures by using excessive and unreasonable force against him, in violation of the Fourth Amendment to the United States Constitution.

56.    At all times leading up to and during this vicious canine attack, Plaintiff CAMBA PONCE did not pose, or could not reasonably be perceived to pose, any danger of death or serious bodily harm to Defendant AGENT or the public. As a result, Defendant AGENT's use of force was objectively unreasonable.

57.    At all times leading up to and during this vicious canine attack, it was well-established that the Fourth Amendment to the United States Constitution does not permit government officers to use excessive and unreasonable force against a person, unless that person posed an immediate and significant threat of death or bodily harm to the officers or to the public.

58.    Defendant AGENT's excessive and unreasonable use of force directly and proximately caused severe injuries to Plaintiff CAMBA PONCE.

59.    Defendant AGENT's excessive and unreasonable use of force directly and proximately caused Plaintiff CAMBA PONCE's injuries and damages described in Paragraphs 69–74.

60.    This cause of action for the violation of Plaintiff CAMBA PONCE's Fourth Amendment rights is brought pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

61.    Alternatively, and without waiving the other causes of action asserted in this Complaint, Defendant AGENT is individually liable for the injuries and damages resulting from his excessive and unreasonable use of force against Plaintiff CAMBA PONCE.

## COUNT IV: COMMON LAW BATTERY CLAIM AGAINST DEFENDANT JOHN DOE AGENT

62.    Plaintiff CAMBA PONCE hereby realleges and incorporates Paragraphs 1–34 as if

fully set forth in length.

63.     Defendant AGENT intentionally caused harmful or offensive contact with Plaintiff CAMBA PONCE by intentionally releasing an unmuzzled Border Patrol canine to chase and apprehend a helpless, unarmed person, thereby causing Plaintiff CAMBA PONCE to suffer severe injuries.

64.     Alternatively, Defendant AGENT intentionally caused harmful or offensive contact with Plaintiff CAMBA PONCE by verbally commanding this specially trained law enforcement tool to attack and maul a helpless, unarmed person, thereby causing Plaintiff CAMBA PONCE to suffer severe injuries.

65.     Alternatively, Defendant AGENT intentionally caused harmful or offensive contact with Plaintiff CAMBA PONCE by allowing this specially trained law enforcement tool to continue attacking and mauling an apprehended or subdued person, thereby causing Plaintiff CAMBA PONCE to suffer severe injuries.

66.     Defendant AGENT's actions of utilizing this specially trained law enforcement tool in such a manner not only constituted excessive and unreasonable force, but was also unauthorized, unprivileged, and unlawful.

67.     Defendant AGENT's battery directly and proximately caused Plaintiff CAMBA PONCE's injuries and damages described in Paragraphs 69–74.

68.     Alternatively, and without waiving the other causes of action asserted in this Complaint, Defendant AGENT is individually liable for the injuries and damages resulting from his battery of Plaintiff CAMBA PONCE.

## V.  PLAINTIFF OSVALDO CAMBA PONCE'S DAMAGES

69.     Plaintiff CAMBA PONCE hereby realleges and incorporates Paragraphs 1–34 as if

fully set forth in length.

70.     Based on these facts, the named Defendants are liable to Plaintiff CAMBA PONCE for his injuries and damages proximately caused by this vicious canine attack.

71.     As a direct and proximate result of this attack, Plaintiff CAMBA PONCE suffered severe bodily injuries to his right arm, including: his elbow; forearm; wrist; hand; fingers; and the muscles, tendons, and nerves therein.

72.     As a direct and proximate result of this attack, Plaintiff CAMBA PONCE has incurred expenses for medical care, nursing services, attention and other expenses. These expenses were necessary for the care and treatment of the injuries sustained by Plaintiff CAMBA PONCE, and the charges made and to be made were the usual and customary charges for such services. Plaintiff CAMBA PONCE will require further medical care, nursing services, and attention, and will necessarily incur reasonable expenses in the future for such medical needs.

73.     As a direct and proximate result of this attack, Plaintiff CAMBA PONCE has also suffered the following damages:

a.   Past and future physical pain and suffering;

b.   Past and future mental anguish;

c.   Past and future impairment and disability;

d.   Past and future loss of earning capacity;

e.   Past and future disfigurement;

f.   Past and future loss of household services; and

g.   Past and future loss of enjoyment of life.

74.     For these reasons, Plaintiff CAMBA PONCE has been damaged in an amount within the jurisdictional limits of this Court.

## VI.   RELIEF REQUESTED

75.     Plaintiff CAMBA PONCE suffered damages as a direct and proximate result of this vicious canine attack, and therefore, requests monetary relief of no more than $2,000,000.00 pursuant to 28 U.S.C. § 2675(b).

76.     Plaintiff CAMBA PONCE also seeks judgment for all other relief he is entitled to, including, but not limited to, pre-judgment interest, post judgment interest, and costs.

77.     Pursuant to 42 U.S.C § 1988(b), Plaintiff CAMBA PONCE seeks an award of reasonable attorney's fees incurred in the vindication of his civil rights.

## VII.   JURY DEMAND

78.     Plaintiff CAMBA PONCE respectfully requests a trial by twelve-person jury for all triable issues and damages in this case.

**WHEREFORE,** Plaintiff CAMBA PONCE prays that Defendants be cited to appear and answer, and that on final trial, Plaintiff have judgment against Defendants for all relief requested, for costs, attorney's fees, pre-judgment and post judgment interest, and for such other relief, general and special, at law or in equity, to which Plaintiff is entitled.

Respectfully submitted,

SCHERR & LEGATE, PLLC
Attorneys for Plaintiffs
109 North Oregon, 12th Floor
El Paso, Texas  79901
(915) 544-0100 voice
(915) 532-1759 facsimile
samlegate@scherrlegate.com
MLopez@scherrlegate.com

*/s/ SAM J. LEGATE*
**SAM J. LEGATE**
TX Bar No.: 12166600
**MANUEL E. LOPEZ III**
NM Bar No.: 154051